Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA 94133
Telephone: (415) 651-1951
Fax: (415) 500-8300
Email: mark@aoblawyers.com

Attorney for Plaintiff Colin N. Clements

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Colin N. Clements, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| US Bank National Association;<br>Trans Union, LLC;<br>Experian Information Solutions, Inc.; and<br>Equifax Information Services, LLC, | Violation of the Fair Credit Reporting Act & the California Civil Code<br><br>Jury Trial Demanded |
| Defendants. | |

### Preliminary Statement

1. This is an action for damages brought by plaintiff Colin N. Clements against defendants U.S. Bank National Association, Trans Union LLC; Experian Information Solutions, Inc.; and Equifax Information Services, LLC for violation of the Fair Credit Reporting Act ("FCRA") and the Consumer Credit Reporting Agencies Act, Civil Code Section 1785.25(a).

### The Parties

2. Plaintiff Colin N. Clements is an individual consumer.

3. Defendant U.S. Bank National Association is a national bank and a furnisher of consumer information to the defendant credit reporting agencies ("CRAs").

4.  Defendant Trans Union, LLC ("TU") is a limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

5.  Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

6.  Defendant Equifax Information Services, LLC ("Equifax"), is a Georgia limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

**Jurisdiction & Venue**

7.  The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the state law claims pursuant to 15 USC § 1367.

8.  The defendants do business in this district.

**Description of the Case**

9.  Plaintiff Colin N. Clements formerly maintained a checking account and a Premier Line Plus Account, which was a line of credit.

10. On October 12, 2015, a US Bank representative called plaintiff to inform him he was late in making a payment on his line of credit. This was news to plaintiff, who habitually always pays his bills on time. After discussion and research, the bank representative informed plaintiff the account statements were going to his former work address on Bercut Drive in Sacramento. However, that address had not been his work address since February 2015. Plaintiff never asked the bank to send statements to any address other than his home address. On October 12, 2015, plaintiff asked a bank representative to correct his address so mail would come to his home address, but the employee failed to make this change in his address. Consequently, the bank continued sending his

statements to the wrong address (and they were not forwarded to plaintiff).

11. In the same telephone call, plaintiff told the bank representative that he would like to avoid having the bank report to the credit reporting agencies that he had been late in making a payment. The bank representative assured plaintiff that if he made the required payment within five business days, the bank would not report a late payment to credit reporting agencies.

12. On October 16, 2015, plaintiff went to US Banks' downtown Sacramento branch. He informed a teller he wanted to pay off what he owed on each of his accounts and to close all of his accounts. The teller referred plaintiff to another bank employee at a desk, who after researching his accounts told plaintiff that there was a balance owed to US Bank of $3,220.00, net of any cash in the checking account. Plaintiff specifically told the bank employee he wanted to pay off what he owed on the Premier credit line. The employee told plaintiff he could not pay the credit line directly, but instead he had to first deposit the money in his checking account and then the bank would then apply the funds to his credit line. Plaintiff gave the bank employee $3,220 in cash and the employee gave him a receipt.

13. On November 4, 2015, US Bank sent a late payment notice concerning the line of credit to plaintiff's home address. Plaintiff opened the envelope on November 15, 2015. Plaintiff immediately called US Bank's customer service line and spoke to Tiffany. Plaintiff explained that he had paid sufficient money to pay off the credit line obligation on October 16, 2015, and thus no payment should be due. Tiffany said the bank records showed that that payment had been received, but that it was not transferred to the Premier credit line account. She said the bank had not closed the accounts and that additional charges had been posted so the accounts could not be closed. Plaintiff explained that the additional charges were fraudulent. Plaintiff informed Tiffany if the bank had closed the accounts as he requested, there would have been no extra charges.

14. To assist in the preparation of this complaint, plaintiff obtained copies of his US

*Clements v U.S. Bank et al*, ND Case No.
Complaint and Jury Demand                                                                                                   3

Bank statements for the period October 7, 2015, through February 4, 2016. These statements have plaintiff's former work address, the same address plaintiff asked be changed. The bank statement for the month ending November 7, 2015, shows plaintiff made a deposit $3,220 on October 16, 2015, which was sufficient to pay what he owed on the line of credit. The bank statement for the period ending December 4, 2015, shows the bank transferred $3,100.20 to the line of credit to pay the balance owed.

15. On January 10, 2016, plaintiff obtained his credit report update from Identity Guard. The report showed that US Bank was reporting plaintiff had been 30 days late in making a payment to the line of credit in October 2015 and 60 days late in paying in November 2015. Plaintiff called US Bank on that date to dispute the late reports.

16. Plaintiff brought the error to the bank's attention once again on or about March 18, 2016. Once he did so, the bank transferred the money in the checking account to pay off the line of credit and it reversed the interest and late fee charges totaling $229.70 resulting in plaintiff having a credit in the account of $5.89. It also deleted certain fraudulent charges.

17. On or about April 10, 2016, plaintiff received a copy of his credit reports and noted that not only had the erroneous late payment indications for October and November 2015 not been removed, US Bank added a new 30 day late payment notice for February 2016.

18. On April 24, 2016, plaintiff Clements sent a letter to US Bank's consumer recovery department in St. Louis, Missouri, asking the bank to delete the negative information it had reported to the credit bureaus. Plaintiff explained he had asked the bank to pay off his line of credit and close his accounts in October 2015, but the bank had erred and not done so. He explained that the bank had reversed the fraudulent charges, interest, and late fees on the account on March 18, 2016. He enclosed a copy of a statement showing the reversal of the charges. However, the bank failed and refused to instruct the credit bureaus to delete the negative account information.

19. On December 13, 2016, plaintiff sent dispute letters to defendants Experian, Equifax, and Trans Union in which he explained the detailed history of the account. He enclosed a copy of the bank statement showing the bank had reversed the interest and late fee charges.

20. Every bank representative who spoke to plaintiff about this matter confirmed that a payment sufficient to pay off the line of credit was received by US Bank in October 2015. For example, on January 6, 2017, bank representative Brian confirmed that plaintiff's payment had been received in October 2015. (Brian indicated he was in a bank department that only handled credit reporting issues relating to fraud and, thus, would not be able to correct the credit reporting in this case).

21. On January 16, 2017, Experian sent plaintiff the results of its investigation which were that no changes were made in its reporting on the line of credit account ending in 6124. Experian continued to report that plaintiff had been 30 days in October 2015, which is misleading because the bank representative had promised plaintiff he would not be reported late if he paid off the line of credit. Experian also reported plaintiff was 60 days late in payment on the account in November 2015 and 30 days late in February 2016, which was inaccurate.

22. On January 10, 2017, Equifax sent plaintiff the results of its investigation. Equifax continued to report the same information that Experian was reporting.

23. On January 12, 2017, Trans Union sent plaintiff the results of its investigation. Trans Union continued to report the same information that Experian and Equifax were reporting.

24. Defendants' conduct has caused plaintiff to suffer actual damages in the form of (a) lost credit opportunities, b) lost employment opportunities, c) harm to credit reputation and credit score, and (d) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to plaintiff's great detriment and loss.

25. Defendant U.S. Bank is a subscriber to the CRAs. As such, at least once a month, U.S. Bank electronically transmits its customers' account information to CRAs. Each such transmission includes changes, additions and deletions of customers' account information.

26. Plaintiff's account status was included in each of U.S. Bank's monthly transmissions of information to the CRAs.

27. When U.S. Bank transmitted the loan account information, it knew that the CRAs would sell the credit information to anyone who had a permissible purpose to obtain the credit information and who was willing to pay the CRAs fees. Such persons include Banks, finance companies and others that are in the business of loaning money to consumers.

28. Potential credit grantors that were considering extending credit to plaintiff sought and obtained plaintiff's credit reports from one or more of the CRAs.

29. Each time a CRA sold a copy of plaintiff's credit reports to a potential credit grantor, recruiter, recruiting firm, or employer, plaintiff was damaged. Each such sale was a separate publication of U.S. Bank's misleading reports.

30. Credit scores are used by recruiters to decide whether to propose their candidate to a given potential employer and by employers to decide whether to provide an offer of employment. They are also used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of the consumer's credit reports published by the CRAs. Plaintiff's credit scores were adversely affected by defendants 'inaccurate credit reporting.

**First Claim: Violations of the Fair Credit Reporting Act—Against Trans Union LLC, Experian and Equifax**

31. Plaintiff incorporates by reference ¶¶ 1 through 30.

32. The Fair Credit Reporting Act provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consume notifies the agency directly of such dispute, the agency shall

conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 USC § 1681i(a)(1) (A).

33. In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

34. Within the two years preceding the filing of this complaint, plaintiff notified the defendant CRAs of inaccuracies contained in its reports and asked them to correct the inaccuracies.

35. The defendant CRAs failed to conduct a reasonable reinvestigation of the inaccuracies that plaintiff disputed.

36. The defendant CRAs failed to review and consider all relevant information submitted by plaintiff.

37. The defendant CRAs violated 15 USC § 1681c(f) by failing to report that plaintiff disputed the accuracy of the account in question.

38. The defendant CRAs failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiff's s credit reports, information and files in violation of 15 USC § 1681e(b).

39. The defendant CRAs failed to maintain reasonable procedures designed to prevent the reappearance of information that has been deleted in violation of § 1881i(a)(5)(C).

40. Because of the above-described violations of § 1681i and § 1681e(b), plaintiff sustained damages.

41. Defendants' violations of the FCRA were willful and therefore plaintiff is therefore entitled to also seek statutory and punitive damages.

//

*Clements v U.S. Bank et al*, ND Case No.
Complaint and Jury Demand                                                                                             7

**Second Claim: Violations of the Fair Credit Reporting Act—Against U.S. Bank**

42. Plaintiff incorporates by reference ¶¶ 1-41.

43. The FCRA requires a furnisher such as U.S. Bank, after receiving notice from a CRA that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the CRA.

44. Within the last two years, U.S. Bank provided misleading, inaccurate and misleading information to the CRAs.

45. U.S. Bank violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a) willfully and negligently failed to investigate and correct misleading and inaccurate information plaintiff disputed;

(b) willfully and negligently failed to review all relevant information concerning plaintiff's account;

(c) willfully and negligently failing to report the results of investigations to the CRAs;

(d) willfully and negligently failing to report the misleading, incomplete, and inaccurate status of the inaccurate information to the CRAs;

(e) willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the CRAs concerning the inaccurate, misleading and incomplete information disputed by plaintiff;

(f) willfully and negligently failing to provide the CRAs with the information and evidence plaintiff submitted to U.S. Bank that proved that the information concerning plaintiff's credit reports was inaccurate;

(g) willfully and negligently continuing to furnish and disseminate inaccurate and

derogatory credit, account and other information concerning plaintiff's account to the CRAs; and

46. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b).

47. U.S. Bank violated 15 USC § 1681s-2(a)(3) and 15 USC § 1681s-(b) by failing to mark the account as disputed and failing to inform the CRAs the account was disputed.

48. Because of the above-described violations of § 1681s-2(b), plaintiff has been damaged.

**Third Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against U.S. Bank**

49. Plaintiff incorporates by reference ¶¶ 1-48.

50. California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

51. U.S. Bank negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate, misleading, and incomplete.

52. U.S. Bank failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

53. Based on these violations of Civil Code § 1785.25 (a), plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

**PRAYER**

WHEREFORE, plaintiff prays for judgment as follows:

1. Actual, statutory and punitive damages;
2. Injunctive relief;

3. Costs and attorney's fees; and

4. Such other relief as the Court may deem proper.

Dated: March 2, 2017.

      ANDERSON, OGILVIE & BREWER LLP

      By /s/ *Mark F. Anderson*
        Mark F. Anderson
        Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

Dated: March 2, 2017.

      ANDERSON, OGILVIE & BREWER LLP

      By /s/ *Mark F. Anderson*
        Attorney for Plaintiff